IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LARRY C.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 1:19-cv-01371-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 9) and the Commissioner's Motion for Summary Affirmance (Doc. 12). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Larry C. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on October 30, 2015. He alleged disability beginning on December 25, 2014. His claims were denied initially on February 5, 2016 and upon reconsideration on July 13, 2016. Larry filed a request for hearing concerning his DIB and SSI applications which was held on February 26, 2018 before the Honorable Gerard J. Rickert (ALJ). At that hearing, Larry was represented by an attorney, and Larry and a vocational expert (VE) testified.

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 6) on the docket.

Following the hearing, Larry's DIB and SSI claims were denied on June 29, 2018. His request for review by the Appeals Council was denied on March 28, 2019, making the ALJ's Decision the final decision of the Commissioner. Larry was given an extension of time by the Appeals Council to file a civil action, and he timely filed the instant civil action seeking review of the ALJ's Decision on November 19, 2019.

## II

At the February 2018 hearing, Larry testified that he lived alone in a single-story home he rented. He claimed the following conditions limited his ability to work: seizures; shake all over from medication; forgetful; and chronic obstructive pulmonary disease (COPD). AR 277.

Larry testified about his past work which included spraying homes with insulation, driving a fork truck, and operating a crane. He worked at one place for two weeks at which time he had a seizure and wet his pants, and because Larry did not want anyone to see he wet his pants, he left work. Though he called the employer when he got home, the employer would not take him back.

Larry testified that he had seizures "[a]bout two – every two months. Something like that. One a month. Sometimes it'll skip a month. The last one was January 3[, 2018]." AR 75. He spent his days sitting in a chair and doing a "little bit" of housework. AR 77. He did not have a driver's license as he had a DUI in 2006 and he stated he could not drive now "anyway because of seizures." AR 78. His hobbies included building little model racecars, watching a lot of television, and reading the newspaper for pleasure. He was able to bathe and dress himself.

Before he questioned the VE, the ALJ stated to her: "Okay. Ms. Andrews, I ask you to put aside any opinions you may have formed or conclusions you may have reached with regard to the Claimant's capabilities, answer the questions put to you, based on the assumptions you're instructed to make." AR 85. The ALJ first

asked the VE to assume an individual the same age as Larry with the same education and past work that the VE summarized before the hearing who was limited to lifting or carrying up to 25 pounds frequently, 50 pounds occasionally, no climbing of ladders, ropes, or scaffolds, no exposure to concentrated respiratory irritants or temperature extremes, and no work at unprotected heights or around hazardous machinery. The VE testified that Larry's past work as a conveyor feeder off-bearer would remain viable. The VE also identified grocery bagger, counter supply worker, and dining room attendant as medium work the hypothetical individual could perform.

### III

The ALJ determined Larry had the following severe impairments: COPD and seizure disorder. AR 37. The ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can never climb ladders, ropes or scaffolds. The claimant must have no concentrated exposure to respiratory irritants or temperature extremes. He must also have no exposure to hazards such as unprotected heights or hazardous machinery.

AR 40.

The ALJ detailed medical records dated December 2014, January 2015, April 2015, October 2015, January 2016, March 2016, August 2016, September 2016, and July 2017 which specifically dealt with Larry's seizure disorder. In December 2014, Larry was diagnosed with a new onset seizure and was started on Keppra. In January 2015, he reported a new seizure and was continued on Keppra and was provided a neurology referral. Dr. Ergene assessed Larry with epilepsy in April 2015, determined Keppra did not seem to be effective for Larry, and prescribed a

different seizure medication. Dr. Ergene continued to change the medications prescribed to Larry throughout the relevant period.

The ALJ discussed the times Dr. Ergene provided letters to Larry and physician medical reports which detailed he was allowed to climb ladders (May 2015), he was not allowed to drive, get up on ladders/scaffolds or use heavy machinery/equipment unless seizure free for at least six months (November 2015), he was unable to work either part- or full-time but could return to work if he had no seizures (March 2016), he was able to work but Dr. Ergene recommended no driving, avoiding ladders/scaffolds and using heavy machinery/equipment unless Larry remained seizure free for six months (May 2016), he was unable to work either part- or full-time due to seizures but could return to work and could participate in a classroom assignment if he had no seizures (September 2016), and he was unable to work either part- or full-time due to seizures but could return to work and could participate in a classroom assignment if he had no seizures (July 2017).

In support of his finding that the record did not demonstrate limitations resulting from Larry's impairments were totally work preclusive or greater than provided in the RFC assessment, the ALJ pointed to Larry's hobbies, ability to perform personal care independently, and performance of household chores. With regard to Dr. Ergene's opinions of Larry's abilities, the ALJ pointed out that Dr. Ergene did not make any specific limitations with respect to Larry's ability to stand, walk, sit, lift, or carry. The ALJ explained, "Certainly there is no evidence that the claimant 'cannot perform any function due to seizures,' particularly given the claimant's daily activities" and ultimately gave Dr. Ergene's opinions little weight. AR 46. With regard to the State Agency doctors' opinions that Larry could perform heavy work, the ALJ explained that "having reviewed the entirety of the evidence including the claimant's testimony at the hearing, the undersigned has

4

given the claimant the benefit of the doubt in determining that a limitation to medium work is warranted." *Id*. Lastly, the ALJ explained in support of his RFC finding, "The record establishes that the claimant's functioning is not adversely affected beyond the limitations set forth in the adopted [RFC]." AR 46-47.

## IV

### A

Larry argues the ALJ's finding of RFC fails to convey the true nature and extent of Larry's seizure disorder. Specifically, he argues: 1) the ALJ erred in failing to rationally connect the evidence with his RFC finding; 2) the ALJ's finding that Larry can do his past work is not supported by substantial evidence; and 3) the ALJ's finding that Larry can do other work in the economy is not supported by substantial evidence.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled.

Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966[2]. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

---

[2] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Larry claims error on the ALJ's part at Steps Four and Five.

**B**

The crux of Larry's motion to remand is that the ALJ's RFC finding failed to convey the true nature and extent of Larry's seizure disorder such that his Step Four and Five findings are not supported by substantial evidence. The Commissioner argues that the ALJ's RFC finding is substantially supported by the evidence as the ALJ reasonably considered Larry's medical records, reasonably weighed the medical opinions regarding Larry's physical functioning, and properly analyzed Larry's subjective reports.

An RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record"). Here, the ALJ reasonably considered Larry's medical records and other evidence of record pertaining to the fact that Larry had seizures and to the frequency of his seizures. First, the ALJ acknowledged that Larry testified that he had approximately one seizure per month. Second, the ALJ acknowledged that in December 2014 Larry was diagnosed with a new onset seizure, was thereafter

7

prescribed medication to treat seizures, and was diagnosed in April 2015 with "localization-related (focal) (partial) epilepsy and epileptic syndromes with complex partial seizures, without mention of intractable epilepsy." AR 41. The ALJ detailed that upon seizure onset, Larry was advised not to drive for six months, work with ladders, heights, or heavy machinery, or swim alone, and that treating neurologist Erhan Ergene, M.D. continued to prepare correspondence on Larry's behalf that Larry, among other things, not drive, avoid getting up on ladders, and not use heavy machinery unless seizure free for six months. Third, the ALJ considered the number of seizures Larry reported to his doctors that he experienced during various intervals of time. The ALJ also considered that Larry indicated, in some instances, he had seizures at times he skipped taking his seizure medication. As the ALJ indicated in the Decision, Larry's treating Dr. Ergene's assessment in July 2017 was that Larry had "occasional partial seizures." AR 516. Thus, the ALJ sufficiently connected the dots between Larry's seizure disorder and the frequency of Larry's seizures and the RFC finding insofar as the latter entirely precluded the use of ladders, ropes, and scaffolds and exposure to hazards such as unprotected heights or hazardous machinery. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (stating an ALJ must build a logical bridge from the evidence to the conclusion).

However, the RFC finding only accounts for the fact and frequency of Larry's seizures. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). There is no indication in either the ALJ's Decision as a whole or the ALJ's RFC finding in particular that he considered the effects[3] of Larry's seizures when Larry did have

---

[3] In his Motion for Summary Judgment, Larry refers to what he has reported and others have observed him to experience during seizures as "consequences." *See, e.g.*, Plf's MSJ (Doc. 10 at pg. 18).

8

them. As the effects of seizure activity pertain to the question of what, if any, limitations the seizures *at the time of occurrence* caused Larry insofar as his ability to work is concerned, the ALJ was required to consider that evidence. *See Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004) ("The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations") (citing 20 C.F.R. § 404.1545(a)(1)); *and* 20 C.F.R. § 416.945(a)(1) ("We will assess your [RFC] based on *all the relevant evidence* in your case record) (emphasis added).

The ALJ did not mention the third-party statements in the record provided by Larry's sister, niece, and friend in November 2015. They each provided that based on their actual observations, Larry had one or less seizures per month, that he had them both during the day and at night, that he lost consciousness, and that he had jerking, thrashing movements while seizing. Larry's sister indicated immediately following a seizure Larry had loss of memory, his niece indicated immediately following Larry was not coherent and confused, and his friend indicated immediately following Larry had fogginess. His sister also indicated he foamed at the mouth during a seizure. Larry's sister and niece both indicated Larry was injured during his seizures. An ALJ "need not discuss every piece of evidence, but the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Notably, the ALJ cited to treatment notes which explicitly indicated that Larry reported seizures that were "unwitnessed." AR 41 (citing Exhibit 24F/63); AR 42 (citing Exhibit 24F/50).

In light of the evidence the ALJ *did* discuss, it appears the ALJ ignored an entire line of evidence that, if not contrary, was at the very least pertinent to the question of limitation on the ability to work stemming from the effects of Larry's seizures. The Commissioner argues that subjective reports are not enough to establish disability. True, subjective reports *alone* are not enough, but an ALJ is not permitted to entirely do away with the consideration of subjective reports in the

9

first instance. The ALJ was tasked to consider third-party reports in the record alongside the objective medical records, Larry's own reports, and the opinions of record to which the Commissioner points to say the ALJ's Decision is substantially supported. *See* 20 C.F.R. § 404.1529(a) ("We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work"); 20 C.F.R. § 404.1529(c)(3) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms"). The Commissioner's argument that the objective medical records and medical opinions provide substantial support for the ALJ's physical RFC finding ignores that such evidence provided no information as to what Larry experienced at the very moment he had a seizure. As the ALJ entirely failed to discuss the third-party reports, the Court cannot determine whether the ALJ considered whether the observed effects of Larry's seizures presented limitations supported by the medical record which then have to be included in the RFC finding.

Given the foregoing, the Court tends to agree with Larry that if someone had not read the record in this case and had read only the ALJ's RFC assessment, it is not possible to draw the conclusion that Larry suffers from seizures the effects of which are loss of consciousness, thrashing about, foaming at the mouth, cognitive impairment, and sometimes injury. The shortcoming in the ALJ's RFC finding is illustrated by the fact that the VE, who was explicitly instructed to "answer the questions put to you, based on the assumptions you are instructed to make," testified that Larry was able to perform his past work which involved the

use of a crane.[4] AR 85. The ALJ's discussion of the record evidence does not connect the dots between the evidence of Larry's incapacitation during a seizure and the VE's testimony that he would remain able to perform his past work. The fact that the VE proceeded to testify to other work an individual with Larry's RFC could perform may render harmless the ALJ's reliance upon the VE's testimony as to Larry's past work. However, the harm necessitating remand remains; the VE's testimony was based upon a hypothetical that did not in any way convey the effects of Larry's seizures.

Because the ALJ committed legal error with regard to the RFC and corresponding hypothetical to the VE, the VE's testimony at Step Five does not amount to substantial evidence in support of the ALJ's decision of non-disability. *See Young*, 362 F.3d at 1005 ("When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand"). The Commissioner says the Court should affirm where Larry concedes that there are sufficient jobs available for an individual with his RFC and where Larry does not contend that his seizure disorder necessarily precludes the performance of all work in the economy. But, as Larry puts it, "[t]here may be other vocational consequences to periodic events of [seizure effects], but the point is that these consequences are for the [VE] to consider if she is to provide fair and reliable testimony as to the availability of other work." Plf's MSJ (Doc. 10 at pg. 24). The undersigned accordingly recommends remand for the ALJ to properly assess the effects of Larry's seizures at the times they do occur and to craft an RFC

---

[4] As to Larry's Step Four argument that he could not perform his past work because it required the use of a crane, the Commissioner argues only that any error at Step Four was harmless because the ALJ went on to Step Five.

and hypothetical question to the VE which adequately convey the limitations those effects present.

V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 9) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 12) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on October 19, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE